Dr. Charles T. SHROPSHIRE and Lee Vision Center, Inc., Appellants,

v.

TEXAS OPTOMETRY BOARD, Appellee.

No. 20389.

Court of Civil Appeals of Texas, Dallas.

Nov. 6, 1980.

Rehearing Denied Dec. 4, 1980.

E. B. Comstock, Dallas, for appellants.

Dorothy Prengler, Asst. Atty. Gen., Dallas, for appellee.

Before AKIN, CARVER and STOREY, JJ.

STOREY, Justice.

This is an action for mandatory injunction brought under the Texas Optometry Act, Tex.Rev.Civ.Stat.Ann. art. 4552, to compel One Price Optical, a dispensing optician, to remove an identifying sign from a building housing its office and the office of a practicing optometrist. The trial court granted the mandatory injunction on the ground that defendant was in violation of subsection 5.15(a) of the Texas Optometry Act, because the sign created the misleading impression that the two offices, of opticianry and optometry, operated under joint control and that the sign was a form of solicitation by one for the other. We conclude that the Texas Optometry Board has no power to regulate the relationship between optometrists and opticians in any manner not specifically authorized by the Texas Optometry Act. Because the activity here alleged to be a violation is not specifically prohibited by the Act, we conclude that the relief sought by the Board is an attempt to circumvent the statutory prohibition against the exercise of any discretionary authority by the optometry board by promulgating rules and regulations by judicial fiat. Accordingly, we reverse the judgment of the trial court and dissolve the mandatory injunction.

█ The dispensing optician, One Price Optical, dispenses eyewear to patients on prescription.[1] It is a subsidiary of defendant Lee Vision Center, Inc. Its operations are supervised by Dr. Charles T. Shropshire, also a defendant in this suit. Dr. Belote is licensed in the practice of optometry and maintains his office next door to the office occupied by One Price Optical. The two offices are located at the west end of a one story building which also houses several retail stores. The west wall of the building is a parapet wall which extends above the roof line of the building. This wall also forms the west wall of Dr. Belote's office and the sign in question is located atop the wall of the building. The sign is in the shape of a horseshoe and proclaims "One Price Optical: Fine Eyewear." Dr. Belote has no control over the sign and is not a party to this suit, but his office is located between the sign and the office occupied by One Price Optical. The Texas Optometry Board contends that the placement of the

---

1. An optometrist examines eyes to determine the necessity for corrective lenses. An optician dispenses lenses upon prescription. The legislature has concluded that the two must be separate in order to preserve the independent professional judgment of the optometrist and thereby promote the public health, safety, and welfare. Tex.Rev.Civ.Stat.Ann. art. 4552 (Vernon 1976).

sign creates the misleading impression of joint control and operates as a form of solicitation by one office for the other.

The Texas Optometry Board predicates this contention upon its interpretation of subsection 5.15(a) of the Texas Optometry Act as a grant of power to the Board to insure that the practice of optometry be totally separate from the business of any dispensing optician. Subsection 5.15(a) provides:

> The purpose of this section [5.15] is to insure that the practice of optometry shall be carried out in such a manner that it is completely and totally separated from the business of any dispensing optician, with no control of one by the other and no solicitation for one by the other, except as hereinafter set forth.

The Optometry Board points to no specific language in the enumerated subsections, art. 4552–5.15 (b) through (f), which prohibits or regulates the placement of signs, and we find none. Our analysis begins, therefore, with the scheme of section 5.15.

Section 5.15 is the only section purporting, by express terms, to regulate the relationships between optometrists and dispensing opticians. As such, it is reasonable to read subsection 5.15(a) as a statement of legislative purpose pertaining to the construction of the particular provisions of section 5.15 rather than to the whole Act. Indeed, subsection 5.15(a) begins with "the purpose of this section . . . " but concludes "except as hereinafter set forth." We conclude that the statute, though inartfully worded, addresses specific prohibited and allowed instances of optician-optometrist relationships, and, by addressing those specific instances, has precluded the exercise of discretionary authority by the board.

The specific relationship relevant here, the occupation of space by an optometrist and optician in the same building, is addressed in subsection 5.15(b).[2] That subsection places qualifications upon the right of opticians and optometrists to engage in practice in the same building or premises: the two offices must be separated by solid partitions or walls, and have wholly separate entrances actually used by patients. No mention is made of signs, and no other language enlarges upon or limits the scheme set out in subsection 5.15(b). Thus, we conclude that subsection 5.15(b) is not an "exception" to the broad prohibitions of subsection 5.15(a), but rather specifically authorizes contiguous practice with certain qualifications set out therein which are designed to effect the purposes set forth in subsection 5.15(a). Likewise, subsections (c) through (f), authorize certain conduct, with qualifications as set forth in each subsection. This is the format of section 5.15, and the language of subsection 5.15(a) "except as hereinafter set forth" merely refers to this scheme rather than establishing exceptions to a rule set forth in subsection 5.15(a).

Our analysis of this section is supported by the Code Construction Act, Tex.Rev.Civ. Stat.Ann. art. 5429b–2, which allows us, regardless of whether the statute is ambiguous, to look, inter alia, to the circumstances under which the statute was enacted, former statutory provisions, and the consequences of a particular construction. We conclude that the legislature intended a result quite different from the construction of subsection 5.15(a) asserted by the Board as a grant of broad power. It is clear from reading the Act, and from considering the circumstances surrounding its amendment and restructuring in 1969, that the legislature intended that there should be no regulatory authority exercised by the Board except as specifically set forth in the Act.

---

2. We note that section 5.10 of art. 4552 regulates advertising by dispensing opticians, and does not prohibit the placement of a sign as in this case. That section seems a more appropriate rubric under which the legislature might have sought to regulate the creation of a "misleading impression" of joint control in the public mind. Certainly, nothing in section 5.15 justifies it as a grant of authority to regulate "misleading impressions." Rather, the history of the Act indicates that section 5.15 is designed to protect the independent professional judgments of optometrists, and does not directly regulate the creation of "impressions" in the public mind.

**280**

■ In this respect, until codified and amended in 1969, the Optometry Statutes granted to the Optometry Board broad regulatory authority. In *Texas State Board of Examiners in Optometry v. Carp,* 412 S.W.2d 307 (Tex.1967), the supreme court followed a series of its own decisions upholding the regulatory authority of the Board by stating:

> We believe that the Legislature, by investing the Board with broad rule–making powers "[for] the enforcement of this Act" and "[for] the regulation of the practice of Optometry," contemplated that the Board would use these powers to correct the evils generally classified in ... the Optometry Act.

In 1969, the Legislature chose, however, to delete the provisions of the Act granting the Board broad powers by adding section 2.14 to the Act. That section deprives the Board of its prior authority to make substantive rules and regulations and limits its authority to the making of procedural rules and regulations. Section 2.14 provides:

> The board shall promulgate procedural rules and regulations only, consistent with the provisions of this Act, to govern the conduct of its business and proceedings. Notwithstanding any other provision of this Act, the board shall not have any power or authority to amend or enlarge upon any provision of this Act by rule or regulation or by rule or regulation to change the meaning in any manner whatsoever of any provision of this Act or to promulgate any rule or regulation which is in any way contrary to the underlying and fundamental purposes of this Act, or to make any rule or regulation which is unreasonable, arbitrary, capricious, illegal, or unnecessary.

We are persuaded that the relief which the Board seeks, if granted, would result in an impermissible exercise of discretionary power.[3] Circumstances of the enactment of the optometry code, and the drastic change in the Board's rule–making authority, convince us that the legislature intended to inhibit the Board's exercise of discretionary powers. To hold that subsection 5.15(a) granted the Board broad discretionary powers would be in contravention of the clearly expressed legislative intent found in section 2.14.

Other circumstances persuade us that the legislature did not intend subsection 5.15(a) to be a grant of general power to the Board. In 1969, when the Public Health Committee of the Texas Senate was considering Senate Bill 781, later adopted as the current Texas Optometry Act, its chairman requested an opinion from the attorney general's office as to the effect of section 2.14 on the bill, which was later enacted unchanged as Tex.Rev.Civ.Stat.Ann. art. 4552–2.14. The attorney general concluded:

> Under Section 2.14 of Article II of Senate Bill 781, the rulemaking power of the Optometry Board would be limited to the promulgation of procedural rules and regulations to govern conduct of the Board's business and proceedings and *the Board would not have the power now existing, to adopt rules and regulations for the enforcement of the Act and for the regulation of the practice of optometry.* [Emphasis added.]

Tex. Att'y Gen. Op. No. M–387 (1969). Because the legislature, upon receipt of this opinion, made no changes in section 2.14, but enacted it precisely as proposed, we conclude that the legislature intended to limit the rulemaking and discretionary authority of the Board.

Consequently, we hold that subsection 5.15(a) is intended solely as a statement of

---

**3.** The relief granted by the trial court was an injunction against the placement of signs by defendants, not only at the Lubbock location, but at "any of the opticianry outlets that Defendants operate and control ..." Clearly, such an injunction is overbroad in dealing with matters not before the court, and, because of its breadth, takes on the character of a rule or regulation promulgated, not by the Board whose authority is expressly circumscribed in this regard by § 2.14 of the Optometry Act, but by the courts. We conclude that the effect is the same, and that neither the Board nor the judiciary may adopt substantive rules and regulations governing the practice of optometry when the legislature has not granted that power.

purpose to aid in construction of the specific terms of subsections (b) through (f) of section 5.15 of article 4552. Accordingly, we find the conduct enjoined by the trial court was not a violation of the Act, and the injunction was improvidently granted. We therefore reverse the judgment of the trial court and dissolve the injunction.